UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 17-110-5 (CRC) |
| | : | |
| Uka Uche, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing.

**Factual Summary**

Uka Uche ("Uche") is a U.S. citizen who was employed by Company A as an Operations System Specialist. At Company A, Uche had access to proprietary and trade secret data beginning in or about 2008.

In or about January 2015, co-defendant Samuel Ogoe ("Ogoe"), a former employee at Company A, called Uche and asked him for information for some of the processes used to make Company A's products. Ogoe stated he was trying to make the same product for CBMI. Uche, from his Company A email account, sent Trade Secret 2 to his personal email account. On January 14, 2015, Uche, from his personal email account, emailed Ogoe at Ogoe's CBMI email account Trade Secret 2.

Trade Secret 2 contained the density of different 10mm macrospheres, including the performance of specific spheres pulled from a specific batch. Company A tested spheres for

1

diameter and weight, with the results averaged to represent the entire batch.  Company A density calculations would provide a competitor key information about the performance of a certain batch of Company A's macrospheres, and benchmarks to meet in the production of the competitor's macrospheres.  Access to such density calculations at Company A was password protected and restricted to a small number of Company A employees.

On or about January 30, 2015, Uche sent an email from his personal email account to Ogoe at Ogoe's CBMI email account with the subject "Test procedure."  Attached to the email was Trade Secret 3.  Trade Secret 3 was the Standard Operating Procedures ("SOP") for Hydrostatic Pressure Testing.  Company A's SOP for hydrostatic testing, a necessary quality control measure, was a trade secret.

## Sentencing Factors

Pursuant to 18 U.S.C. § 3553(a) the court shall impose a sentence that is sufficient, but not greater than necessary to comply with the purposes of the statute which include the need for the sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training.

In addition, the statute requires the court to consider a number of factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence

disparities; and (7) the need to provide restitution to any victims.

The defendant pled guilty to Count One of the Indictment, charging him with conspiracy to Commit Theft of Trade Secrets. 18 U.S.C. § 1832.   The presentence report calculated the base offense level as 6, and added 4 points because the loss attributable was in excess of $6,500, but less than $40,000.[1]   The report then subtracted two points for acceptance of responsibility. The defendant has a criminal category of I and a total offense level of 8, for a guideline range of 0 to 6 months.

## Argument

It appears that but for the defendant sending trade secrets to Sam Ogoe, the defendant would have no criminal record.   The defendant made a tragic and unfortunate decision to send information valuable to Company A to a work acquaintance, though it does not appear that he received any benefit from doing so.   The government views a period of supervision as appropriate.

The damage caused by the conspiracy was extensive.   Company A spent millions of dollars and years building up and refining its products; CBM International, controlled by co-defendant Shan Shi, used the stolen secrets to build up itself and its parent, CBMF, in China. Within two years, CBMF was marketing products it believed were competitive with Company A's products.   Ogoe's transfer of trade secrets to CBMI, which made use of them, caused harm to Company A, and enriched CBMI and CBMF.

Although the defendant caused damage to Company A, determining the total amount of restitution related to this defendant's actions involves complex issues of fact related to the

---

[1] The government views the amount as being in excess of $15,000 but not necessarily less than $40,000.

amount of loss.  Providing restitution from the defendant to Company A would be outweighed by the time and expense of Company A testifying in this case, as well as how that restitution apportionment relates to the actions of other defendants who had a more involved role in the offense.  The government has advised Company A that it will seek to make restitution not mandatory pursuant to 18 U.S.C. § 3663A(c)(3)(B).

        Respectfully Submitted

        Jessie K. Liu
        United States Attorney

BY:    _____/s/_____
        Jeffrey Pearlman
        Assistant United States Attorney
        United States Attorney's Office
        555 Fourth St., NW
        Washington, D.C.   20001
        202-252-7680
        Jeffrey.pearlman@usdoj.gov